And you may be seated. Our first case of the afternoon is 4090734 in re the Marriage of Erkman. For the appellate, Mr. Riva. Is that the right pronunciation? And for the appellate, Mr. Lynch. You may proceed. Judge Riva for Jess Erkman. I'm pleased with the court. The court's obviously aware we've raised three issues I want to talk about. The two main ones here this afternoon. The first one has to do with the evaluation of Erkman & Sons, which was the closely held business of the parties. What I want to do is kind of take us through chronologically. We had Mr. Lynch engaged, Neil Gerber, one of the appraisers. You've probably had cases with him. He's one of the top people. We've used him ourselves in many cases. What he started with and how we ended up with the trial court ruling. Kind of what happened in between because it's what happened in between that brings us here. Basically what Mr. Gerber did was produce a September 22, 2008 report that says right on it that it's based on a June 30, 2007 valuation date. Page 1 even says that the purpose was to conduct a fair market value analysis as of June 30, 2007. The important point, of course, is that the dissolution of marriage in this case was in January of 2009. The statute and case law are clear that we value it as of the date of dissolution as close as we can get to it. Mr. Gerber said he really wasn't making a full evaluation. He used a net asset methodology where he concluded what the book value of the assets were and took off the liabilities. He said here's my net equity figure. His report specifically at Appendix B, Paragraph 6 says he's reflecting the facts as they exist as of June 30, 2007. He's not considering subsequent events and the valuation is valid only for that date in question. Now flash forward to our trial. Judge Feeney came up with the same $100,000 valuation in January of 2009. that Mr. Gerber had as of June of 2007. And if it weren't for the fact that there is just clear unrefuted evidence in the exhibits as to what happened in this business, we wouldn't be here. But if you look at the exhibits that were the Respondent's Exhibits 1, 3, 12, 21, and 33, it basically shows as of different dates how this business just basically collapsed due to the economy being bad. This is a local HVAC plumbing business. A lot of competition as Mr. Gerber's report says. And basically the thing went into the tank. And even Mr. Gerber interestingly in his report, remember he's talking September of 2008. He's looking back at June of 2007. But he even notes that at the end of July of 2008, six weeks before his report, the net equity doing it the same way he had done it was all the way down to $11,000 or $100,000. Now as I said, Judge Feeney said he's just going to use the same $100,000 figure. And our point is he had to have been using Gerber's date in 2007. And did not pick up on the fact that there had been all of these major changes. Mr. Riva, you're the appellant in this case. And you didn't give us a transcript of the trial, did you? I did not. And the reason for that was we found out that there wasn't one taken. We had thought that actually that this had been recorded. And when we went to ask for it, we found the only thing that they had was what you have, which is the supplemental record, which was when Judge Feeney ruled in February of 2009. You don't have a bystander's report that was certified by the court regarding the testimony of the trial. That is correct. And our point still is, I know we've briefed this in this preliminary round of things, and I don't know whether you want to spend a lot of time on that or not. You can spend as much time as you want. Our view still is that there's enough, that this is not like we had, it's not like there were no exhibits and we were just talking about testimony. Mr. Gerber gave us his opinion. It was their exhibit number one, backed up by exhibit two, which was the tax returns. Then, on the contrary, we put in these supplemental documents to show the financial picture had changed. Remember, Mrs. Erfman was actually the bookkeeper for this business. There was no quarrel that these weren't the right documents. But you did call an expert. We did. Well, we didn't in the sense of listing one and calling one as a witness, but we actually cross-examined Mr. Gerber and basically made the argument to Judge Feeney that, in essence, he was everyone's expert because we agreed with his methodology. We agreed we were going to use book value, assets minus liabilities equals net equity. We didn't need to pay somebody to come in and say that's the right method. Remember, Gerber had already said, using the figures that were referenced in his own report, that the net equity had gone down from $100,000 to $11,000. And maybe shoot me for not having someone come in and say the same thing, but it seemed pretty obvious to us that if we were agreeing with Gerber's analysis, we didn't have to pay somebody else to come in and say the same thing. If we were using his methodology and the correct documents, financial-wise, by date, as close as we could at the trial, we think that's all we had to do. But we don't have the benefit of knowing how Gerber testified, and maybe there was some explanation for why he used the value that he came up with in 2007, but we don't have a record of it. I agree you don't, but I don't think you need one because of the way that Judge Feeney, you do have the way he ruled. And if I can speak to that briefly, it's not like he gave a whole list of, here's why I think Gerber's $100,000 should be applied at this point. Remember, it's the exact same figure. If it were a different figure, maybe we wouldn't be here. But the fact that it's this exact same figure with totally different financials, that's why we're here. My point is that when you look at what Judge Feeney actually said, we've got the financial evidence. Here's the report. I mean, Gerber, we're agreeing Gerber said what was in his report. It's not like we're trying to say that we destroyed his credibility in our cross-examination. His report stands. We're fine with the court assuming that what the report says is what the evidence was. Our point is that we look at what Judge Feeney said in the announcement of court's order, and all he's talking about is he's comparing Gerber's report to our most latest exhibit that shows the finances right before the balance sheet, January of 2009. And we say that if you look at pages five and six of that report, he says, I'm going to draw a comparison to those. Now, the only thing he says that seems to be anything descriptive of why he agreed that the $100,000 was appropriate was that he somehow concluded that the fixed assets were worth $98,000. He looked at our exhibit number one, and that showed basically with depreciation the fixed assets weren't worth anything. He comes up with this $98,000 figure, and that's what is able when he adds the receivables and the cash, takes off the liabilities to get to $100,000. The point is, we agree. Gerber said all the equipment, machinery, and everything was only worth $20,000. Again, we're agreeing with everything. This is not a determination of who to believe or credibility. We're agreeing with everything that Gerber said. But how do we go from Gerber saying everything's worth $20,000 to all of a sudden now it's worth $100,000 a year and a half later? It doesn't make sense to us. I know that maybe isn't a legal standard. Would you expect that Jefferson property? Yes, sir. How much money did the trial court order Jesse to pay the marital estate? Well, that's what the problem is. If he had evidence of what the dollar amount was or even some close in a range even, he may have been able to say by clear and convincing evidence, Jesse owes the marital estate tax dollars. Does that affect this trial court order being appealable? Pardon? Does that affect this trial court order being appealable? I haven't really thought of it. I would say it is appealable because I think it's at least finally resolved. If this is in the nature of an order for the parties to do something to help create the calculation, I think that would be my point. I haven't really researched that. It seems to me that what the judge did was he said, and I think he even used the word cobweb. I'm going to make a cobweb out of this. I'm going to send you guys back to figure this out. It seems to me that that's enough of an order. It resolves the issue to the extent that it resolves and creates a remedy. A remedy is given. So I would say it is an appealable order. Did you ever figure it out? Did you come back to Judge Feeney with a figure? No, we never even tried to figure it out because we appealed. Our basic argument there, if I can get into it real quick, is they had their chance. They had the right to do discovery. They could have gotten whatever documents, tax returns, asked questions and depositions. They didn't do that. And the fact is Judge Feeney said I don't – it's obvious to me. I hope it's obvious to the court that there couldn't have been clear and convincing evidence of what amount there was to be reimbursed because I think if there had been, Judge Feeney would have said, here it is, there. But doesn't the trial court as the trier have discretion to say, this is what I think the correct result is. I don't have all the information I need. So you guys go out, see if you can agree on the information, and then come back if you can't. I would say no. And maybe that's the ruling. You may say I'm wrong, and then we'll all know. But it seems to me that from earlier precedents from this court, the Wearies and Albrecht seem to say if you put those two together, you have to have clear and convincing evidence, not only of the – there is a right of reimbursement. You have to prove the how much, and you have to prove the how much based on the evidence already presented. I can't see why this would be any different case than a personal injury case where someone didn't prove their damages up. The trial court can't say, well, you're entitled to money. Come back, figure out what the medical bills were if you didn't put all the medical bills in. How is the party going to decide what the amount of money is? Well, as I said, I'm hoping that you say we don't have to, that they didn't prove their case. But if they do, I suppose if the case – if that issue is affirmed, then we're going to have to – I guess the directive of the court is to exchange documents and try to figure out from the tax returns and whatever other information is available. This is not – I don't think this is going to be an insignificant amount. That's why we appealed this. I don't expect this to be – we wouldn't have appealed for a few thousand dollars. But marriage was in 1983, so we're talking 25-and-a-half years of taxes and insurance and possible repairs and other expenses, which was a generic reference in the order. And, frankly, I don't know what that would come to. I don't think anyone's even rolled up their sleeves to make a stab at it. But, again, we didn't even have anything suggested in any of the briefing and any of the arguments or any of the reference in Judge Feeney's ruling that – I'm going to estimate it and figure it's a $65,000 piece of property. They probably spent $10,000 or $5,000 or $20,000. There's nothing in the record of the ruling of the court and there's been nothing argued that I've seen on appeal by the other side that they did prove a figure. So your position is it was their burden to prove their right to reimbursement and the amount by convincing evidence they didn't do that and by Judge Feeney at the end of the trial saying, well, go back and get me some information that shows that they didn't prove it and, therefore, he shouldn't have allowed that, I guess is what you're saying. And, again, I think that's – and, you know, if you read that, Weery's and Albrecht's cases, I mean, they may not have been – I think some of the panel members may have been on those, to tell you the truth. I believe I've made some notes on those. Not that that makes them any better or worse, I suppose. But I will concede that there's not a wealth of analysis. And have I actually seen in even those cases, Your Honor, say that the amount, not just the fact of contribution, has to be proved by clear and convincing evidence? I haven't seen anything to the contrary either. So maybe this is the case. And that's why, irrespective of a record on the report or proceedings of the trial, I think there clearly isn't enough that frames that legal issue that I think should be resolved. I wanted to ask you one other question about the finality of the order. There was a finding by the court that there may be a liability for the business to the IRA accounts in an amount of $16,788.59. And then the court went on to say, and that amount shall be paid to the IRAs prior to the division should said debt exist. It doesn't seem to me like the court determined whether a debt existed or not. Well, of course, that's our third issue. We appealed that thinking that that was improper to be making at least some attempt at a ruling without really saying that there was a ruling or that there was any basis for it. So, frankly, Your Honors, I don't know whether Mr. Lynch hit the books. I used to work for Judge Nash on the 2nd District. We always looked at jurisdiction. I frankly didn't even consider that. And if you want us to, I would be happy to. But I just assumed that we had something that was final enough and figured it better to appeal than not appeal, I would say. So, in summary, and I'll defer to Mr. Lynch here. In summary, my point is on this reimbursement issue that it's obvious from the record that you have everything you need to show that Judge Feeney did not have clear and convincing evidence of the dollar amount or even a range. And we say that law is that you have to have that. The statute says clear and convincing evidence. Your cases have to carry that forward to the how much, not just the if question. And back to evaluation real quick. We argue in our brief that there's also this Brenner case that, if you again look at what Mr. Gerber said in his report, if you weigh that against what the expert did in the Brenner case, which we cite in both our briefs, he basically did the same thing that was discredited in that case. And I'll defer at this point unless anyone has any questions at this point. Thank you. Good afternoon. I'm David Lynch. I'm the CEO for the appellate in this matter. I might go backwards to go into the easier answer. In regard to the third, the IRA issue that the court mentioned, and my brief attached to paragraph A-1, dependents exhibit number one, it actually shows in the exhibit that there is a $16,788.59 equity owed, excuse me, debt the corporation owes to an IRA. The wording of Judge Feeney obviously was not my wording. He obviously saw that there is a debt owed. It's shown in the balance sheet, which was submitted by counsel, and that it's an accrued debt. It has to be paid to clean the books up and equal it out. That's why he did it. His wording wasn't what I would have picked, obviously. Can I ask you just a space? Sure. Why don't you go back to him and say, on a motion for clarification, or something like that? He did go back on motions to reconsider, and this was the final ruling. And he said, I think I did see that, and he said something like, I don't see any reason to change my rulings. But there's no final finding that there was this debt. I understand, and there are times you can go to a court and you can ask a court for what the court should do, and the court tells you what it's going to do. And unfortunately, that was the case. It's clear why it's there. It's in the books and the records. It's in their exhibits, in the balance sheet. It shows the debt owed by the corporation to the IRA. It has to be paid. You can't clean up the books of the corporation without paying it. It's clearly an accrued debt as of the day of the dissolution of the marriage. As a consequence thereof, what is paid into the IRA is it's required to be paid in. Did the other side contest that it was do-annoying? I know. There was never any contest on that that I know of, and I'm sure I was there all day that day and at the various hearings after that date. Was Mr. Riva the trial attorney? Yes, he was. In regard to the house going backwards once again, the major argument in that trial was not so much the contributions made by the Maryland State to the non-marital asset. It was the contention of the wife that the house bought in contemplation of marriage. It was purchased about a month and a half before the marriage themselves, completely paid for in cash, which is the unusual aspect of it. Most houses aren't bought with cash. So there was no mortgage payment paid for 20 years during the marriage. The request for reimbursement was an alternative request that the court found against us as to the issue of whether or not that property was a house or a home bought in contemplation of marriage and therefore should be considered a marital home. The court basically ruled that if he was questioned, the husband was questioned, I think they would acknowledge that. If they did pay real estate each year from income they received during the marriage, he acknowledged they did. When he was asked if they pay house insurance from marital assets during the marriage, he acknowledged they did. And that's where the court in effect brought backwards its reimbursement. We didn't ask for it to be done the way it was done. That's the way he ordered it in the motion to reconsider. He denied or declared, we're back in the court trying to figure this out. That's the way he left it. So that's why we're here in that respect. But it was a secondary request, not the major request, which is of course that he would find that to be a house bought in contemplation of marriage. How soon in advance of the marriage was the home purchased? A month and a half. And they were engaged at that time? Yes. So if you had accepted that argument, then you wouldn't be in the position of having to prove up how much the real estate taxes were Of course not. It would have all been the marital asset, and that would have been just the marital asset for division. So to be honest with you, there's a very side issue that I disagree with this position, but my client and I both knew there was no court order that day available. They don't record in Woodford County in the old court, this is the old courtroom in the old courthouse, and they don't do it in the new one either. So we knew there was no transcript, that's why we didn't appeal. You could have provided your own reporter, couldn't you? Well, my client had decided not to appeal it, and then we got this in, and that's when I filed my motion to dismiss, saying there's been no record. And of course, I initially granted my motion dismissing the appeal, and then at a later date reopened it on his petition, and to be very honest with you, it was a year and a half after the trial. I don't have a good, when you take a trial, you try a case, I'm sure you've all done this, your records of what was said are minimal at best, when you're questioning someone, a witness. I mean, I can go on my memory, but this was a day, almost an entire day trial, that I didn't know I was going to have to put together until 11 months later. I don't have the records, I don't have the delivery, and as I said, by the time I made my motion to dismiss, it was granted, and they found it, it was a year later before I knew I was going to have to try and put something together, and there's no way I could do that. Mr. Lynch, what about the cases that say, let's stick just on the reimbursement issue,  I understand that, and I think really what the judge was doing is basically, I think it was a very close issue in his mind, as to the issue of whether the house is in contemplation of the marriage, and I think he thought it was equitable and fair that she receive some reimbursement for a home she lived in for 25 years, and raised three children in, and basically didn't work and stayed at home, other than the slight work she did for him. She was not the bookkeeper, no offense to Jeff, I don't mean to argue his statements, she was not the bookkeeper, she filled in a form provided by an accountant on the computer, that was her bookkeeping ability, she didn't have any knowledge of the operation of the business as an accountant would, or as a bookkeeper would. Was there an exhibit that showed the value of the home, was there an appraisal? I think it was a stipulated value, that was not even a contested value. What was the value, do you remember? I would probably look it up for you, I'm sorry your honor, I didn't look at that, because that was not an issue we appealed and wasn't relevant, it was in the 60s or 70s, it was not a major home. I'm just wondering if 25 years of taxes, insurance, and maintenance would exceed the value of the home. Well when you go back 25 years, I did go back quickly, taxes 25 years ago would have been a couple hundred dollars a year. You're all present and aware of the size of the real estate tax burden today, it's entirely different obviously than it was way back in the early 60s. As to the first aspect, I still believe that he's got the burden of proof wrong, I still think he has the burden of proof, it manifests with the evidence. And in regard to what happened, Mr. Gribber testified for almost two and a half hours. We don't have any of his testimony obviously preserved, but one thing I would go into is, they never contested even in their own contention that his methodology was wrong. The major point of our cross-examination and my expert was, they never proved any of their facts that they have in these balance sheets as to what the facts were, they never brought anybody to prove that those were actually the correct numbers. When the husband was asked if these were accumulated, what these numbers were, he said, well those are the numbers my wife typed in that I gave her. The divorce was going on all the way through from the point in time where the business all of a sudden allegedly dropped in value. The husband, however, of course, suddenly borrowed money but could not account for where he put the money, never did account for it at the trial. All of that testimony, of course, isn't available. I'm not trying to go around the fact that it isn't available, but counsel is ignoring the fact that Mr. Gribber had no documentation as to where this money went, where the money went from, where the money came to, and as a consequence thereof, the judge did admit it, but we don't know to what extent he considered it to be true, false, or somewhere in between, and how much reliance he granted upon that. Mr. Gribber, in his testimony, indicated that he did not change his opinion and that the documentation that they had submitted to him, all of these documents, the balance sheets which were given to him, did not change his opinion, and he did not feel that the value should be any different. They never asked him the question, what do you think the value is at the present time? As a consequence thereof, the only value the judge had was the $100,000, and then there was a real doubt as to whether they were legitimate loans taken out. There were $60,000 loans taken out in about nine months, no documentation of where that money went, no documentation presented anywhere, and no evidence or experts to justify his expenditures. Was it your theory at trial, not the evidence at trial, but your theory that the business really hadn't gone into the tank as much as... We didn't feel there was any difference at all in the business. She saw the numbers, she saw that she was basically, it was a very unusual case, she would go to the office, even though they were separated, when he wasn't there to type in the numbers, so she was there... I figured that was with his... Yeah, I figured with the partner, he didn't know how to do this, he was completely unable to handle that aspect. So it was not by disagreement by the parties, he needed it done, she did it. She was actually paid a salary while the case was pending to complete that work. Her testimony was that she saw no change in the amount of things that came in and went out, the amount of material coming in and going out, didn't feel there was any difference, but obviously never had any ability to know the numbers, since she was in sole control of those numbers. Mr. Lynch, Mr. Riva argued that you had the burden to show by clear and convincing evidence the reimbursement amounts you were entitled to, and it seems to me from reading the judge's order that there was not evidence adduced regarding that. We did not, I'm not going to pretend that we did, we did not adduce the numbers from the date of the marriage up to and including the date of the divorce, we adduced the numbers from real estate taxes about four years back. That's all the numbers we had at that point, that's all the numbers we had available to us at that point, and to be honest with you, I was much more focused on the first aspect, which if I'd had a transcript I would have appealed, which is the issue. Whether that house was bought and got a place to marry, that was by far, excuse me, I'm sorry, that was by far my most important, where I was focused in this case. If the court has any further questions? No, thank you. Thank you. Briefly, Mr. Lynch was asked about this, that third, what I consider the third order about the IRA. Just, and I think counsel would agree, I think what happened, I don't know if anyone really said anything about it, and then Judge Feeney made his ruling, and then we filed a motion to reconsider, and he, as the court notes from the order, it's fairly cryptic, you got all you're going to get out of me, and there you go. So, I don't think we really even discussed that issue at all, and I don't know if that helps either on whether it's appealable or not. Well, who got the IRA? Well, I'm not even sure we necessarily did. They're divided equally after that's paid into the IRA. So, it should be a half and half deal. But, Mr. Riva, I think I asked Mr. Lynch, did you contest a trial that that was a proper debt that should be paid back into the marital estate and then divided equally between the parties? No, we didn't because it wasn't really something to be contested with. You didn't contest it, or you didn't concede it, I'm not sure which one I asked you. I didn't do anything with it. I didn't argue it at all. It shows up in the exhibits. It shows up in the exhibits. And Judge Feeney was paying attention to the exhibits. What we were trying to do, and Judge Feeney obviously read the whole exhibit, we were focused on what the net equity figure was, and he found that IRA reference as well as he found what he thought was something not copacetic in the way those depreciation figures were with respect to the machinery and equipment. Back to my argument about Gerber said it was $20,000. He said it was almost $100,000. So, one thing, and it's really my only other comment because I think we've pretty well briefed this and I'll be happy to answer any other questions.  I think this reimbursement case goes to this 600 North Jefferson, which I don't think was the marital home. I think the marital home that we argued all about the contemplation of marriage was a separate piece of property. This was Mr. Erkman's, it's a residential piece of property, but I don't think it was the one that the parties lived in. Irrespective of that, my argument is the same. I don't think whether, if anything, if it had been the marital home, we would have had a second argument, which the courts already alluded to, that she was benefited by living. I think we made that argument to the extent there was a reimbursement claim, but I don't think there was actually a reimbursement claim agreed to by Judge Feeney on the home. I think it was... That Jefferson was a rental house. Right, it was a rental house. But again, I think that's six of one, half of those of the other. I think the rule is the same. I don't think that Mrs. Erkman gets any more right, even if she had lived on the property for a while, I don't think her reimbursement claim is any stronger in terms of being able to not put on proof of what the amount is. But marital funds were expended for the real estate taxes, the insurance and things on his rental home, which was non-marital property. Right, that was, I think, was bought before the marriage or inherited. But your position is they needed to prove the amounts at trial by clear and convincing evidence, and then maybe she'd have a claim to reimbursement, but she failed to do that. Exactly. That's one of the two main reasons why we're here. So I'd be, again, happy to answer anything that the court might have. One other side thing. Peoria County, they don't have court reporters for divorces, do they? Well, they do. Well, they have the... It's all recorded. ...that we record. This is Woodford County. Peoria does record everything now on tape. Is it the central recording unit that's run by a former court reporter? Right. Controlling the different court processes? Right. Peoria and Pekin, that's the way they do it. I think the whole 10th Circuit, but I think in Woodford, for whatever reason, they haven't got it at that point yet. Well, it wasn't any surprise to you that they didn't have a reporter. I knew there wasn't. I don't know. I'm not trying to degrade. I knew there wasn't that day in my mind, so I just wanted to get it done that day, so we would have it. I guess maybe I just assumed that there was and couldn't have. So... Anything further? Anything else? Okay. Thank you, Your Honor. Thank you. We'll take the matter under advice.